

1   Michelle Dabadie
2   9022 Burton Way
    Beverly Hills, CA 90211
3   Tel: (310) 406-4826
    Fax: (310)288-0788
4   email: micky@lucindaellery.com

    In Pro Per

5

6               UNITED STATES DISTRICT COURT

7               CENTRAL DISTRICT OF CALIFORNIA

8

9   MICHELLE DABADIE, an individual;        Case No. CV14-0223 VAP (SPx)

10        Plaintiffs,

11  v.                                       **COMPLAINT FOR
                                             BREACH OF CONTRACT;**
12  ANTONIO SANTILLAN 1993                   **BREACH OF THE IMPLIED
    TRUST, DATED APRIL 29, 1993, a           COVENANT OF GOOD FAITH
13  rental property income producing real    AND FAIR DEALING;
    estate investment trust, ANTONIO         INTENTIONAL INFLICTION OF
14  SANTILLAN, an individual, STEVEN         EMOTIONAL DISTRESS;
    GOURLY, an individual, MARCOS            VIOLATION OF CALIFORNIA
15  SANTILLAN, an individual, and DOES       CIVIL CODE SECTION 1950.5;
    1 to 10                                  CONVERSION;
16                                           VIOLATION OF BUSINESS &
          Defendants.                        PROFESSIONS CODE SECTION
17                                           17200**

18

19

20

21

22

23

24

25

26

27

28

1    COMES NOW MICHELLE DABADIE for her complaint against defendants

2    ANTONIO SANTILLAN 1993 TRUST, dated April 29, 1993, STEVEN GOURLY,

3    ANTONIO SANTILLAN and MARCOS SANTILLAN complains and alleges as

4    follows:

5    **JURISDICTION AND VENUE**

6    1.    There is complete diversity between Plaintiffs and Defendants and this

7    Court has jurisdiction under 28 U.S.C. § 1332 as the amount in controversy, without

8    interest or costs, exceeds the sum or value of $75,000.

9    2.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2)

10    and §1391(c)(2) because (1) a substantial portion of the wrongs complained of herein

11    occurred in Los Angeles County, (2) a substantial part of property that is the subject of

12    the action is situated here and (3) Defendants are subject to personal jurisdiction in Los

13    Angeles County.

14    **THE PARTIES**

15    3.    Plaintiff MICHELLE DABADIE is an individual and is now, and at all

16    times mentioned herein was, a citizen of the United Kingdom.

17    4.    Plaintiff is informed and believes, and thereupon alleges, that defendant

18    ANTONIO SANTILLAN 1993 TRUST, dated April 29, 1993 (the "Trust") is a rental

19    property income producing real estate investment trust with its principal place of

20    business in California.

21    5.    Plaintiff is informed and believes, and thereupon alleges, that defendant

22    ANTONIO SANTILLAN ("Defendant Santillan") was a citizen of California, residing

23    in Palm Springs (Riverside County) and was the trustee of the ANTONIO

24    SANTILLAN 1993 TRUST, dated April 29, 1993.

25    6.    Plaintiff is informed and believes, and thereupon alleges, that defendant

26    MARCOS SANTILLAN is a citizen of California and is the trustee of the ANTONIO

27    SANTILLAN 1993 TRUST, dated April 29, 1993.

28    7.    Plaintiff is informed and believes, and thereupon alleges, that defendant

STEVEN GOURLY is a citizen of California and is the trustee of the ANTONIO SANTILLAN 1993 TRUST, dated April 29, 1993.

8.     Plaintiff is currently unaware of the true names or capacities of the Defendants sued herein under the fictitious names DOES 1 through 10, and will seek leave to amend and serve such fictitiously named once their names and capacities become known.  Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or are attributable to, each such Defendant.  Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

## FACTUAL BACKGROUND

9.     In July 2013, Plaintiff and Defendants entered into a Residential Lease Agreement (the "Lease") for property located at 425 N. Alfred Street, Los Angeles, California 90048.  At the time Plaintiff signed the Lease, she was in the United Kingdom and had not seen the subject property.  Defendants did not provide any interior pictures of the property despite repeated requests by Plaintiff.  A true and correct copy of the Lease is attached hereto as **Exhibit A**.

10.     The Lease provides in pertinent part:

**INITIAL PAYMENT**:  TENANT shall pay the first and last months $14,990 and the security deposit in the amount of $15,025.00 for a total of $30,015.00.  Said payment shall be made in the form of cash or cashier's check and is all due July 25, 2013.  (**Exhibit A** at p. 1).

11.     Plaintiff complied with the Initial Payment provision of the Lease and wired Defendants $30,015.00 on or about July 22, 2013.

12.     Pursuant to the Lease, Defendants were required to deliver the possession of the property to Plaintiff on August 16, 2013.  The property, however, was not ready for occupancy that date.  Plaintiff therefore agreed to accept the possession of the property on August 22, 2013.

13.     On or about August 7, 2013, Plaintiff traveled to Los Angeles with her

2

mother and a 7-year old daughter.  Upon arrival, she requested to see the subject property.  Defendants refused, claiming that a former tenant had not moved out.

14.    On or about August 10, 2013, Plaintiff was finally able to inspect the subject property.  Upon inspection, Plaintiff discovered that the property had a swimming pool, which was not visible from various rooms in the house.  The pool was situated such that children using the pool could not be supervised unless an adult was physically present at the pool outside the house.  This was a critical concern for Plaintiff because several family members and friends of family members had previously drowned in unsupervised swimming pool incidents.

15.    On or about August 12, 2013, Plaintiff met with Defendant Santillan and explained that (1) she intended to move in the property on August 22, 2013 with her family per the parties' agreement; (2) due to the concern about the swimming pool, she wanted him to try to find another tenant; (3) she would continue paying rent and living in the property until such time as Defendant Santillan found a new tenant and (4) if he did not find a replacement tenant, she would remain in the property during the Lease term (i.e. one year) and comply with the terms of the lease.

16.    The same day, August 12, 2013, Defendant Santillan told Plaintiff that he would not permit Plaintiff and her family take possession of the property in direct breach of the Lease.  Defendants also refused to return the $30,015.00 deposit, so that she could rent another house and not be stranded with her family and a 7-year old daughter in a hotel.

17.    Plaintiff begged Defendant Santillan to find another tenant and return at least some of the money Plaintiff had paid as a deposit or let her take possession of the property until he found a new tenant.  Defendant refused.

18.    On or about September 28, 2013, Plaintiff's real estate broker found another tenant for Defendants.  The new tenant offered to lease the subject property for $7,000.00, starting October 16, 2013.  Plaintiff agreed to pay the difference of $500.00 for the Lease term, so that Defendants would return at least some of the money Plaintiff

3

1   had paid as a deposit. Defendants refused to sign a lease with the new tenant.

2        19.   Defendants' refusal (1) to deliver the possession of the subject property to

3   Plaintiff on August 21, 2013 as they had agreed to do under the Lease, (2) to return the

4   $30,015.00 deposit to Plaintiff, and (3) to lease the property to the new tenant, caused

5   Plaintiff substantial damages. These damages include, but are not limited to, the

6   $30,015.00 deposit, additional living expenses in excess of $6,500, costs and expenses

7   Plaintiff incurred in connection with finding another house, which required the

8   payment of higher rent, loss or earnings, emotional distress and attorney's fees.

9   **FIRST CLAIM FOR RELIEF**

10   ***(Breach of Contract)***

11        20.   Plaintiff repeats and re-alleges, as though fully set forth herein, the

12   allegations contained in paragraphs 1 through 19 of the Complaint.

13        21.   On or about July 22, 2013, Plaintiff and Defendants entered into the Lease

14   for property located at 425 N. Alfred Street, Los Angeles, California 90048. The Lease

15   was for a term commencing on August 16, 2013 and ending on July 31, 2014.

16        22.   Defendants were required to deliver the possession of the subject property

17   to Plaintiff on or before August 22, 2013.

18        23.   Plaintiff performed all, or substantially all, of the conditions the Lease

19   required it to perform and/or were excused from having to perform such conditions by

20   Defendants' misconduct alleged above, and incorporated herein.

21        24.   In addition, and for the reasons alleged above, Plaintiff was excused from

22   all, or substantially all, of the Lease conditions because Defendants (i) waived

23   compliance with those conditions, (ii) are estopped by their conduct from relying on

24   those conditions and/or (iii) prevented Plaintiff from complying with those conditions.

25        25.   All of the conditions required for Defendants' performance had occurred.

26        26.   Defendants failed to deliver the possession of the subject property to

27   Plaintiff and wrongfully refused to return the $30,015.00 deposit to her. In addition, to

28   the extent that Defendants suffered any damages, they failed to mitigate such damages

1   by refusing to rent the property to a new tenant, who was willing to take possession of

2   the property on or about October 16, 2013.

3        27.    Defendants' failure to deliver the possession of the subject property to

4   Plaintiff and wrongful refusal to return the $30,015.00 deposit to her were material

5   breaches of the Lease, which entitled Plaintiff to terminate the Lease.

6        28.    As a direct and proximate result of Defendants' material breach of the

7   Lease, Plaintiff suffered substantial damages.  These damages include, but are not

8   limited to, (1) the $30,015.00 deposit, (2) additional living expenses in excess of

9   $6,500.00, (3) costs and expenses Plaintiff incurred in connection with finding another

10  house, which   required the payment of higher rent; (4) loss or earnings and (5)

11  reasonable attorney's fees.

## SECOND CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

14       29.    Plaintiff repeats and realleges, as though fully set forth herein, the

15  allegations contained in paragraph 19.

16       30.    California law implies a covenant of good faith and fair dealing in all

17  contracts, including all leases.  The covenant of good faith and fair dealing not only

18  imposes upon each contracting party the duty to refrain from doing anything which

19  would render performance of the contract impossible by any act of its own, but also the

20  duty to do everything that the contract presupposes that the party will do to accomplish

21  its purpose.

22       31.    Defendants breached the implied covenant of good faith and fair dealing

23  by, among other things, (1) failing to deliver the possession of the subject property to

24  Plaintiff, (2) refusing to return the $30,015.00 deposit; (3) refusing to rent the property

25  to a new tenant for the sole purpose of wrongfully retaining the $30,015.00 deposit;

26  and (4) failing to mitigate their alleged damages.

27       32.    As a direct and proximate result of Defendants' breach of the implied

28  covenant of good faith and fair dealing, Plaintiff has suffered, and continues to suffer,

5

substantial damages.  These damages include, but are not limited to, (1) the $30,015.00 deposit, (2) additional living expenses in excess of $6,500, (3) costs and expenses in excess of $3,500.00, which Plaintiff incurred in connection with finding another house, which  required the payment of higher rent; (4) loss or earnings; and (5) reasonable attorney's fees.

33.    Defendants' conduct was fraudulent, malicious and oppressive, justifying an award of exemplary and punitive damages in an amount to be determined by the jury according to proof at trial, but not less than $100,000.

## THIRD CLAIM FOR RELIEF

### *(Intentional Infliction of Emotional Distress)*

34.    Plaintiff repeats and re-alleges, as though fully set forth herein, the allegations contained in paragraphs 1 through 19 of the Complaint.

35.    Defendants' refusal (1) to deliver the possession of the subject property to Plaintiffs, (2) to return the $30,015.00 deposit, so that Plaintiff could lease another house and not be stranded in hotels with her a 7-year old child; and (3) to rent the property to a new tenant for the sole purpose of wrongfully retaining the $30,015.00 deposit caused Plaintiff mental anguish and emotional and physical distress. Defendants knew that Plaintiff could not afford to live elsewhere and was stranded in a foreign country with a seven-year old child without any place to live.

36.    On October 3, 2013, Plaintiff wrote to Defendants:

Unless you have a firm offer from someone else  . . . I will be lo[sing] more money paying for a house that I am not even allowed to live in while new tenants are being sought.  The financial stress of having to pay double for my accommodation while waiting for this matter to be resolved is making me ill with stress and anxiety and I really need for it to be resolved as soon as humanly possible.

37.    Defendants simply ignored Plaintiff's warning that their conduct created a serious financial hardship and was causing serious emotional and physical problems.

38.     On or about September 6, 2013, Plaintiff's mother sent an email to Defendants, explaining that their unreasonable and wrongful conduct had caused Plaintiff undue stress and mental anguish.  The email stated:

> I would like to speak to you as soon as its convenient , *I had a call from Micky at 5am . . . she is quite tearful and at a bit of a loss as it seems that the goal posts are shifting around*, I am unable to understand quite what it's all about so am awaiting her email regarding her concerns . . . *our American dream is in danger of becoming our America nightmare, Micky has invested all her savings in this adventure*, we are not rich but hard working, and I want to minimise (sic) her losses.. *At the moment you have our funds and the house and we have nothing*.

> Legally she has the right to move in, but because you don't want her to and we are desperate for you to find a replacement . . . we are very much at your mercy, and wish to maintain your blessings and good wishes and move on in every way, we have agreed to meet every monthly payment until it has been re let and also if there are no takers at its current rental any shortfall would be met by us until the end of our lease period.

> Your lawyer seems to be changing terms despite our agreement to be responsible for the rent until a new tenant has been secured, he talks about preparing the property to show prospective tenants, and *my understanding is that the property is prepared for such and is the reason you don't want us to live there even temporarily and why we are incurring vast hotel bills . . . , the property is empty . . . we are still prepared to stay there to avoid any additional security costs*, your lawyer also states that you will not receive any income until Alfred is re rented, this is very confusing to us as you have already received the funds that are paying the rent in full, your lawyer also states that our obligations with the lease will end when / if the thirty thousand is exhausted we assumed that this is because you are not allowing us to move in and live there and now the amended lease has done a u turn on that point, does this mean you are now willing for us to take up residence until another tenant is found, *it seem unfair and not right that she would have to potentially pay the full year while other tenant are sought but is not allowed to live there during that time* . . .

39.     Even after receiving this email, Defendants continued to refuse (1) to deliver the possession of the subject property to Plaintiff and (2) to return the $30,015.00 deposit.  Defendants' conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.

40.     As the proximate result of the acts alleged above, Plaintiff suffered mental anguish and emotional and physical distress.

41.     Defendants' conduct was fraudulent, malicious and oppressive, justifying

1  an award of exemplary and punitive damages in an amount to be determined by the jury
2  according to proof at trial, but not less than $100,000.

### FOURTH CLAIM FOR RELIEF

#### *(For Violation of California Civil Code section 1950.5)*

42.  Plaintiff repeats and re-alleges, as though fully set forth herein, the allegations contained in paragraphs 1 through 19 of the Complaint.

43.  The Legislature enacted Section 1950.5 to "prevent the misuse of security deposits" and "ensure the speedy return of security deposits on the termination of a tenancy and to prevent the improper retention of such deposits." *Granberry v. Islay Investments*, 9 Cal.4th 738, 745-46 (1995).

44.  Section 1950.5 provides that "[t]he bad faith claim or retention by a landlord or the landlord's successors in interest of the security or any portion thereof in violation of this section . . . may subject the landlord or the landlord's successors in interest to statutory damages of up to twice the amount of the security, in addition to actual damages." Cal. Civ. Code § 1950.5.

45.  Moreover, "[i]n any action under this section, the landlord or the landlord's successors in interest shall have the burden of proof as to the reasonableness of the amounts claimed or the authority pursuant to this section to demand additional security deposits." Cal. Civ. Code § 1950.5.

46.  Defendants are landlords as that term is used in Civil Code §1950.5.

47.  Plaintiff is a tenant entitled to the protections of Civil Code §1950.5.

48.  Plaintiff is informed and believes, and on that basis alleges, that Defendants devised and engaged in a course of business conduct designed and intended to circumvent and obstruct the public policy behind Civil Code §1950.5.

49.  Defendants unlawfully charged Plaintiff the equivalent of four months' rent for the security deposit for an unfurnished residential property and improperly retained the security deposit in bad faith in violation of California Civil Code section 1950.5.

50.     Plaintiff seeks (1) actual damages set forth above; (2) the return of the security deposit; and (3) statutory damages of up to twice the amount of the security (i.e. $60,030.00) pursuant to California Civil Code section 1950.5.

### FIFTH CLAIM FOR RELIEF

#### *(Conversion)*

51.     Plaintiff repeats and re-alleges, as though fully set forth herein, the allegations contained in paragraphs 1 through 19 of the Complaint.

52.     Due to Defendants' refusal to permit Plaintiff to take possession of the subject property, Plaintiff had a right to possession of the full amount of her security deposit no later than then August 22, 2013.  As of that date, Plaintiff had a right to possession of $30,015.00 that was held by Defendants.

53.     Defendants have intentionally taken possession of and prevented Plaintiff from having access to her $30,015.00 for a significant period of time. In fact, to date, Defendants have prevented Plaintiff from gaining access to her security deposit. Plaintiff did not consent to Defendants' continued retention of her $30,015.00. Plaintiff has thereby been harmed and Defendants' wrongful retention of Plaintiff's $30,015.00 was a substantial factor in causing Plaintiff harm.

54.     Defendants' actions and wrongfully retention of Plaintiff's $30,015.00 was oppressive, fraudulent and malicious, entitling Plaintiff to an award of exemplary damages.

### FIFTH CLAIM FOR RELIEF

#### *(For Violation of Business & Professions Code Section 17200)*

55.     Plaintiff repeats and re-alleges, as though fully set forth herein, the allegations contained in paragraphs 1 through 19 of the Complaint.

56.     The Lease contains an unenforceable and unconstitutional jury waiver provision, which states:

It is acknowledged, between the parties, that jury trials significantly increase the costs of any litigation between the parties.  It is also acknowledged that jury

trials require a longer length of time to adjudicate the controversy. On this basis, all parties waive their rights to have any matter settled by jury trial. (Exhibit A at p. 4).

57.    Plaintiff is informed and believes, and based thereon alleges, that Defendants include and enforce this unconstitutional jury waiver provision in all of their lease agreements.

58.    Defendants' inclusion of an unconstitutional jury waiver provision in their lease agreements constitutes an unlawful and/or unfair practice within the meaning of California Business & Professions Code section 17200, et seq. Plaintiff is informed and believes, and based thereon alleges, that Defendants include such a provision in their lease agreements to discourage their tenants from bringing lawsuits against them.

59.    Defendants' refusal to permit Plaintiff to take possession of the residential property for which she had paid $30,015.00 and their refusal to return the security deposit in violation of Civil Code §1950.5 also constitutes an unfair, unlawful and fraudulent practice within the meaning of California Business & Professions Code section 17200, et seq.

60.    Plaintiff is informed and believes, and on that basis allege, that Defendants have a practice of (1) including unconstitutional and illegal jury waiver provisions in their lease agreements and (2) refusing in bad faith to refund security deposits to their tenants in violation of Civil Code §1950.5. Plaintiff is further informed and believes that Defendants insert a provision purporting to limit attorney's fees to $500 for the sole purpose of discouraging their tenants from bringing legitimate lawsuits against them, so that they can breach their lease agreements with impunity, violate Section 1950.5 and attempt to avoid liability.

61.    As a result of Defendants' violation of Section 17200, Plaintiff suffered substantial damages, including but not limited to the full amount of security deposit. Plaintiff seeks the return of the security deposit wrongfully retained by Defendants, as well as disgorgement of illegal profits that Defendants have obtained as a result of their

unlawful, fraudulent and/or unfair conduct.  Plaintiff also seeks to enjoin Defendants from including unconstitutional jury waiver provisions in their lease agreements.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

### FOR THE FIRST CLAIM FOR RELIEF

1. For actual damages in the amount of $30,015.00;
2. For consequential damages in excess of $10,000;
3. For costs of suit incurred herein;
4. Reasonable attorneys' fees; and
5. For such other and further relief as the Court deems just and proper.

### FOR THE SECOND CLAIM FOR RELIEF

1. For actual damages in the amount of $30,015.00;
2. For consequential damages in excess of $10,000;
3. For exemplary and punitive damages in an amount to be determined by the jury according to proof at trial, but not less than $100,000;
4. For costs of suit incurred herein;
5. Reasonable attorneys' fees; and
6. For such and other further relief as the Court deems just and proper.

### FOR THE THIRD CLAIM FOR RELIEF

1. For actual damages in the amount of $30,015.00;
2. For consequential damages in excess of $10,000;
3. For exemplary and punitive damages in an amount to be determined by the jury according to proof at trial, but not less than $100,000;
4. For costs of suit incurred herein; and
5. For such and other further relief as the Court deems just and proper.

### FOR THE FOURTH CLAIM FOR RELIEF

1. For actual damages in the amount of $30,015.00;
2. For consequential damages in excess of $10,000;
3. For exemplary and punitive damages in an amount to be determined by

11

the jury according to proof at trial, but not less than $100,000;

    4.     Statutory damages in the amount of $60,030.00;

    5.     For costs of suit incurred herein; and

    6.     For such and other further relief as the Court deems just and proper.

## FOR THE FIFTH CLAIM FOR RELIEF

    1.     For actual damages in the amount of $30,015.00;

    2.     For consequential damages in excess of $10,000;

    3.     For exemplary and punitive damages in an amount to be determined by the jury according to proof at trial, but not less than $100,000;

    4.     For costs of suit incurred herein; and

    5.     For such and other further relief as the Court deems just and proper.

## FOR THE SIXTH CLAIM FOR RELIEF

    1.     Restitution of $30,015.00;

    2.     For costs of suit incurred herein;

    3.     Injunctive Relief;

    4.     Disgorgement of illegal profits;

    5.     Reasonable attorneys' fees; and

    6.     For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Under FRCP 38 plaintiffs demand trial by jury.

DATED:  February 4. 2014

By: _____

MICHELLE DABADE
In Pro Per

# EXHIBIT A

The Law Firm of Dennis P. Block & Associates

## Residential Lease Agreement

LANDLORD _Antonio Santillan 1993 Trust, dated April 29, 1993_

TENANT(S) _Michelle Dabadie, Lucinda Ellery and Jean Francois Fourcroy_

PROPERTY ADDRESS _425 N. Alfred Street, Los Angeles, CA 90048_

**1. RENTAL AMOUNT:** Commencing _August 16, 2013_ TENANT agrees to pay LANDLORD the sum of $ _7,495.00_ per month in advance on the _1st_ day of each calendar month. Said rental payment shall be delivered by TENANT to LANDLORD or his designated agent to the following location _5055 E. Calle San Raphael, Ste. A4, Palm Springs, CA 92264_ . Rent must be actually received by LANDLORD, or designated agent, in order to be considered in compliance with the terms of this agreement.

(Check If Applicable) ✓ A prorated share of rent in the sum of $ _3,747.50_ is being paid to cover the period from _September 16, 2013_ to _September 30, 2013_ .

**2. TERM:** The premises are leased on the following lease term: (please check one item only) _____ month to month (OR) ✓ until _July 31, 2014_ with a second year option to be exercised after inspection of property on August 10, 2013.

**3. SECURITY DEPOSITS:** TENANT shall deposit with landlord the sum of $ _14,990.00_ as a security deposit to secure TENANT'S faithful performance of the terms of this lease. The security deposit shall not exceed two times the monthly rent. After all the TENANTS have vacated, leaving the premises vacant, the LANDLORD may use the security deposit for the cleaning of the premises, any unusual wear and tear to the premises or common areas, and any rent or other amounts owed pursuant to the lease agreement or pursuant to Civil Code Section 1950.5. TENANT may not use said deposit for rent owed during the term of the lease. Within 21 days of the TENANT vacating the premises, LANDLORD shall furnish TENANT a written statement indicating any amounts deducted from the security deposit and returning the balance to the TENANT. If TENANT fails to furnish a forwarding address to LANDLORD, then LANDLORD shall send said statement and any security deposit refund to the leased premises. plus $ 35.00 key Deposit.

**4. INITIAL PAYMENT:** TENANT shall pay the first and last months $ _14,990.00_ and the security deposit in the amount of $ _15,025.00_ for a total of $ _30,015.00_ . Said payment shall be made in the form of cash or cashier's check and is all due ~~prior to occupancy~~ July 25, 2013

**5. OCCUPANTS:** The premises are rented for residential purposes only and shall not be occupied by any person other than those designated above as TENANT with the exception of the following named persons:
_Michelle Dabadie, Lucinda Ellery and Jean Francois Fourcroy_
If LANDLORD, with written consent, allows for additional persons to occupy the premises, the rent shall be increased by $100 for each such person. Any person staying 14 days cumulative or longer, without the LANDLORD'S written consent, shall be considered as occupying the premises in violation of this agreement.

**6. SUBLETTING OR ASSIGNING:** TENANT agrees not to assign or sublet the premises, or any part

thereof, without first obtaining written permission from LANDLORD.

**7. UTILITIES:** TENANT shall pay for all utilities and/or services supplied to the premises with the following exception  NONE                                                    .

**8. PARKING:** TENANT ___is not ✓ is (check one) assigned a parking space. If assigned a parking space it shall be designated as space # Driveway   . TENANT may only park a vehicle that is registered in the TENANT'S name. TENANT may not assign, sublet, or allow any other person to use this space. This space is exclusively used for the parking of passenger automobiles by the TENANT. No other type of vehicle or item may be stored in this space without prior written consent of LANDLORD. TENANT may not wash, repair, or paint in this space or at any other common area on the premises. Only vehicles that are operational and currently registered in the State of California may park in this space. Any vehicle that is leaking any substance must not be parked anywhere on the premises.

**9. CONDITION OF PREMISES:** TENANT acknowledges that the premises have been inspected. Tenant acknowledges that said premises have been cleaned and all items, fixtures, appliances, and appurtenances are in complete working order. TENANT promises to keep the premises in a neat and sanitary condition and to immediately reimburse landlord for any sums necessary to repair any item, fixture or appurtenance that needed service due to TENANT'S , or TENANT'S invitee, misuse or negligence. TENANT shall be responsible for the cleaning or repair to any plumbing fixture where a stoppage has occurred. TENANT shall also be responsible for repair or replacement of the garbage disposal where the cause has been a result of bones, grease, pits, or any other item which normally causes blockage of the mechanism.

**10. ALTERATIONS:** TENANT shall not make any alterations to the premises, including but not limited to installing aerials, lighting fixtures, dishwashers, washing machines, dryers or other items without first obtaining written permission from LANDLORD. TENANT shall not change or install locks, paint, or wallpaper said premises without LANDLORD'S prior written consent, TENANT shall not place placards, signs, or other exhibits in a window or any other place where they can be viewed by other residents or by the general public. TENANT shall not store any object on the property outside of the unit.

**11. LATE CHARGE/BAD CHECKS:** The parties agree that it would be impractical or extremely difficult to fix the actual damage incurred by the LANDLORD if the TENANT fails to pay the rent timely. An administrative cost, which is related to collecting and accounting for the late payment, will be assessed at the rate of  10% of the Monthly rent which is $749.50       The ✗ see late charge will commence 3 Days after the rent is due. The parties further agree that the acceptance of Note Below this provision will be conclusive evidence, in any legal proceeding, that calculating actual damage would be impractical and extremely difficult to fix. Furthermore, the late fee assessed above, is conclusive evidence in any legal proceeding that it is a reasonable administrative cost. If rent is not paid when due and landlord issues a 'Notice To Pay Rent Or Quit', TENANT must tender cash or cashier's check only. If TENANT tenders a check, which is dishonored by a banking institution, then TENANT shall only tender cash or cashier's check for all future payments. This shall continue until such time as written consent is obtained from LANDLORD. In addition, TENANT shall be liable in the sum of $25 for each check that is returned to LANDLORD because the check has been dishonored. A fee of $50 will be incurred each time a the Landlord is required to serve a 3 Day Notice To Pay The Rent due to the Tenant's failure to pay rent timely.

✗ Late Fee is based on 10% of the Full Monthly Rent even if a partial rent payment is made.

**12. NOISE AND DISRUPTIVE ACTIVITIES:** TENANT or his/her guests and invitees shall not disturb, annoy, endanger or inconvenience other tenants of the building, neighbors, the LANDLORD or his agents, or workmen nor violate any law, nor commit or permit waste or nuisance in or about the premises. Further, TENANT shall not do or keep anything in or about the premises that will obstruct the public spaces available to other residents. Lounging or unnecessary loitering on the front steps, public balconies or the common hallways that interferes with the convenience of other residents is prohibited. This is a completely no-smoking building. Smoking is prohibited in the unit or the common areas of the property.

**13. LANDLORD'S RIGHT OF ENTRY:** LANDLORD may enter and inspect the premises during normal business hours and upon reasonable advance notice of at least 24 hours to TENANT. LANDLORD is permitted to make all alterations, repairs and maintenance that in LANDLORD'S judgment is necessary to perform. In addition LANDLORD has all right to enter pursuant to Civil Code Section 1954. If the work performed requires that TENANT temporarily vacate the unit, then TENANT shall vacate for this temporary period upon being served a 7 days notice by LANDLORD. TENANT agrees that in such event that TENANT will be solely compensated by a corresponding reduction in rent for those many days that TENANT was temporarily displaced. No other compensation shall be offered to the TENANT. If the work to be performed requires the cooperation of TENANT to perform certain tasks, then those tasks shall be performed upon serving 24 hours written notice by LANDLORD. (EXAMPLE- removing food items from cabinets so that the unit may be sprayed for pests)

**14. REPAIRS BY LANDLORD:** Where a repair is the responsibility of the LANDLORD, TENANT must notify LANDLORD with a written notice stating what item needs servicing or repair. TENANT must give LANDLORD a reasonable opportunity to service or repair said item. TENANT acknowledges that rent will not be withheld unless a written notice has been served on LANDLORD giving LANDLORD a reasonable time to fix said item within in the meaning of Civil Code Section 1942. Under no circumstances may TENANT withhold rent unless said item constitutes a substantial breach of the warranty of habitability as stated in Code of Civil Procedure Section 1174.2. TENANT shall be responsible for any fines or inspection fees imposed by a governmental office as a result of TENANT failing to notify the LANDLORD in writing of a deficiency with the premises.

**15. PETS:** No dog, cat, bird, fish or other domestic pet or animal of any kind may be kept on or about the premises without LANDLORD'S written consent.

**16. FURNISHINGS:** No liquid filled furniture of any kind may be kept on the premises. If the structure was built in 1973 or later TENANT may possess a waterbed if he maintains waterbed insurance valued at $100,000 or more. TENANT must furnish LANDLORD with proof of said insurance. TENANT must use bedding that complies with the load capacity of the manufacturer. In addition, TENANT must also be in full compliance with Civil Code Section 1940.5. TENANT shall not install or use any washer, dryer, or dishwasher that was not already furnished with the unit. TENANT shall not have any musical instruments on the premises.

**17. INSURANCE:** TENANT must maintain a personal property insurance policy to cover any losses sustained to TENANT'S personal property or vehicle. It is acknowledged that LANDLORD does not maintain this insurance to cover personal property damage or loss caused by fire, theft, rain, water overflow/leakage, acts of GOD, and/or any other causes. It is acknowledged that LANDLORD is not liable for these occurrences. It is acknowledged that TENANT'S insurance policy shall solely indemnify TENANT for any losses sustained. TENANT'S failure to maintain said policy shall be a

to promptly notify LANDLORD in writing of any deteriorated and/or peeling paint.

**31. ENTIRE AGREEMENT:** The foregoing agreement, including any attachments incorporated by reference, constitute the entire agreement between the parties and supersedes any oral or written representations or agreements that may have been made by either party. Further, TENANT represents that TENANT has relied solely on TENANT'S judgment in entering into this agreement. TENANT acknowledges having been advised to consult with independent legal counsel before entering into this Agreement and has decided to waive such representation and advice. TENANT acknowledges that TENANT has read and understood this agreement and has been furnished a duplicate original.

**32. Additional terms_____ (See attachment)** Note attachment must be sign by all parties to be valid.

Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at www.meganslaw.ca.gov. Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides.

Date July 19, 2013 _____

XX_____ LANDLORD/AGENT

XX_____ TENANT

XX_____ TENANT

**No representation is made as to the legal validity of adequacy of this agreement. If you desire, consult with an attorney.**

**THE LAW FIRM OF DENNIS. P. BLOCK AND ASSOCIATES**
**1 800 77-EVICT (38428)**
**Copyright 2012**

XX_____ TENANT

※ No For Sale/For Lease sign to be placed on premises more than 60 days prior to the End of this Lease term, or any subsequent or extended lease terms.

※ Owner Nor Owner's representative are not to show home for Sale or For Lease more than 60 days prior to end of this Lease term, or any subsequent or extended Lease terms,

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Virginia A. Phillips_____ and the assigned Magistrate Judge is _____Sheri Pym_____ .

The case number on all documents filed with the Court should read as follows:

### EDCV14-223-VAP(SPx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____February 5, 2014_____
Date

By _C. Sawyer_____
Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| | | |
|---|---|---|
| ☐ Western Division<br>312 N. Spring Street, G-8<br>Los Angeles, CA 90012 | ☐ Southern Division<br>411 West Fourth St., Ste 1053<br>Santa Ana, CA 92701 | ☒ Eastern Division<br>3470 Twelfth Street, Room 134<br>Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
MICHELLE DABADIE

**DEFENDANTS**
ANTONIO SANTILLAN 1993 TRUST, DATED APRIL 29, 1993, a rental property income producing real estate investment trust, ANTONIO SANTILLAN, an individual, STEVEN GOURLY, an individual, MARCOS SANTILLAN, an individial

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Michelle Dabadie
9022 Burton Way
Beverly Hills, CA 90211
Tel: (310) 406-4826
Fax: (310) 288-0788

**Attorneys (If Known)**

ORIGINAL

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)
**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No  ☒ **MONEY DEMANDED IN COMPLAINT: $** 200,000.00

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Breach of Contract; Breach of Covenant of Good Faith and Fair Dealing; Intentional Infliction of Emotional Distress; Violation of California Civil Code section 1950.5; Conversion; and Violation of Bus. & Prof. Code section 17200

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R.& Truck | ☐ 61 HIA(1395ff) |
| ☐ 891 Agricultural Act | **REAL PROPERTY** | | ☐ 445 American with Disabilities – Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | **IMMIGRATION** | ☐ 446 American with Disabilities – Other | ☐ 660 Occupational Safety /Health | ☐ 863 DIWC/DIWW 405(g) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:** Case Number: ED CV14-0223

CV-71 (05/08)  CIVIL COVER SHEET  Page 1 of 2

American LegalNet, Inc.
www.FormsWorkflow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☒ No ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)    List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐   Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

(b)    List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Riverside County |

(c)    List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER):     _AllDabali_                    Date February 4, 2014

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

CV-71 (05/08)                    **CIVIL COVER SHEET**                    Page 2 of 2

American LegalNet, Inc.
www.FormsWorkflow.com